UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAIME GENTRY, as Mother and Natural
Guardian of RG, a minor,

    Plaintiff,

v.                                                                    CASE NO. 6:21-CV-00045-JA-LRH

GAR SHING REALTY CORP.,
a Florida corporation,

    Defendant.
_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement") is made this 3rd day of May, 2021 (the "Effective Date"), by and between JAMIE GENTRY, as Mother and Natural Guardian of RG, a minor ("Plaintiff"), on the one hand, and GAR SHING REALTY CORP., ("Defendant"), on the other hand. The signatories to this Agreement hereinafter are referred to individually as a "Party" or jointly as the "Parties."

This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the matters described below.

### PREAMBLE

**WHEREAS,** Plaintiff initiated a lawsuit in the United States District Court for the Middle District of Florida, Civil Action No. 6:21-cv-45-ORL-28LRH (the



"Action") against Defendant under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("ADA");

**WHEREAS,** Plaintiff claims that Defendant failed to design, construct and/or own or operate a place of public accommodation located at 13105 to 13395 W. Colonial Drive, Winter Garden, Florida 34787 (the "Property") that is fully accessible to, and independently usable by, disabled individuals;

**WHEREAS,** Defendant denies Plaintiff's allegations; and

**WHEREAS,** in order to avoid further costs, burdens and distractions of litigation, the Parties now desire to settle fully and finally any and all claims alleged or that could have been alleged by Plaintiff in any legal action.

**NOW THEREFORE,** in consideration of the mutual promises and releases in this Agreement and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties agree as follows:

**I.   COMPROMISE**

A.   This Agreement is the result of a compromise and shall never be construed as an admission by Defendant of any liability, wrongdoing, or responsibility on its part or on the part of its predecessors, successors, parents, subsidiaries, attorneys, officers, directors, transferees, or employees. Indeed, Defendant expressly denies any such liability, wrongdoing, or responsibility.

B.   Further, the Parties agree, covenant, and represent that none of the actions that will be taken pursuant to this Agreement shall be construed as an admission of liability, any and all such liability being expressly denied. In addition,

this Agreement shall not be admissible in any proceeding between the Parties, except a proceeding relating to a breach of its provisions after execution.

## II. ACTIONS TO BE TAKEN BY DEFENDANT

A. <u>Modifications.</u> Defendant shall cause modifications to be made to the Property sufficient to address, correct, and eliminate the conditions identified in "Exhibit 1" which is attached hereto to this Agreement within eighteen (18) months of the date this settlement agreement is fully executed. The parties acknowledge that the modifications described in this Settlement Agreement and in Exhibit 1 shall be implemented according to the standards set out in the 2010 ADAAG, unless other specifically noted.

B. <u>Completion.</u> If the Modifications are not timely completed due to acts of God, the actions or inactions of third parties, or reasons beyond Defendant's control (including, but not limited to inability to obtain building or zoning permits, failure of city/county inspectors to make inspections, contractor defaults, natural disasters, or work stoppages), then Defendant shall be allowed additional time in which to complete the Modifications and shall not be deemed to be in violation of the completion date. In such case, Defendant or Defendant's counsel shall provide written notice to Plaintiff's counsel of the delay, the reasons therefor, the anticipated date of completion, and shall otherwise make a good-faith effort to effect implementation as soon as reasonably possible thereafter.

If Plaintiff determines that any Modification has not been timely made or properly made, notice thereof shall be furnished in writing to Defendant's counsel

within ten (10) days of discovering said failure, whereupon the Parties shall, within twenty (20) days thereafter, meet to address and seek to agree to a plan for resolution and/or correction if needed.

C. Re-Inspection. A final property re-inspection conducted by the Plaintiff's counsel will take place on or after November 1, 2022, to ensure that the modifications to the subject property have been completed. Subject to Plaintiff's reasonably advance written notice to Defendant through Defendant's counsel, Plaintiff's counsel, expert(s) and/or representatives shall be provided access to Defendant's property to conduct a re-inspection and to verify commencement, progress and completion of the work required hereby. In any event, Defendant or their counsel, shall notify Plaintiff's counsel by Certified Return Receipt Mail when all improvements contemplated herein are completed.

## III. SETTLEMENT PAYMENT

Defendant agrees to pay the total sum of THIRTEEN THOUSAND DOLLARS ($13,000.00) as settlement of Plaintiff's claims against the Defendant, to include all Plaintiff's attorney's fees, court costs and related expenses, such as the costs of Plaintiff's expert witness and consultant fees, which are paid in lieu of statutory fees that might otherwise be recovered. The payments shall be made payable to "Fuller, Fuller & Associates, P.A.", and be submitted to John P. Fuller, Esq., 12000 Biscayne Blvd., Suite 502, North Miami, Florida 33181, within ten (10) business days of approval of this Agreement by the Court, and the law firm of Fuller, Fuller & Associates, P.A. shall issue a W-9 form to Defendant. Plaintiff's counsel

further acknowledges that Plaintiff, Plaintiff's counsel, and their respective consultants, experts, and any similar person(s) or entity(ies) are not entitled to any other amounts whatsoever from Defendant, in connection with the above-styled lawsuit and/or this settlement of same. The Plaintiff shall file or cause to be filed a Stipulation of Dismissal with Prejudice with the Court within five (5) business days of receiving the aforementioned settlement payment, and the clearance of said settlement proceeds. The Court, if willing to do so, shall retain jurisdiction for purposes of enforcing the terms of this Agreement.

## IV. RELEASE

Upon the Court's approval of the Motion for Approval of Settlement Agreement, Plaintiff and all related persons, partnerships, or other entities and her heirs, predecessors, successors, assigns, transferees and agents ("Releasors") hereby release and forever discharge Defendant, and each of its past, and present, persons, partnerships, corporations, and its predecessors, successors, successor owners, subsidiaries, assigns, transferees, agents, directors, officers, members of governing boards, employees, shareholders, insurers and attorneys ("Releasees"), from and against all the claims and causes of action raised in Case No. 6:21-CV-00045-JA-LRH against the Defendant (the "Released Claims"), including all claims by the Releasors for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by Defendant pursuant to this Agreement. This Agreement is only intended as a release of Plaintiff's claims against Releasees in regards to their

property located at 13105 to 13395 W. Colonial Drive, Winter Garden, Florida 34787.

## V. APPROVAL BY THE COURT

Pursuant to Florida Statute Section 744.387, the parties are submitting this Settlement Agreement to this Court for review and approval.

## VI. ADDITIONAL TERMS AND CONDITIONS

A. This Agreement sets forth and constitutes the entire agreement between the Parties with respect to its subject matter and supersedes any and all prior agreements, understandings, promises, warranties, and representations made by each Party to the other concerning their subject matter. This Agreement may be modified only by a written document signed by all Parties. No waiver of this Agreement or of any of its promises, obligations, terms, or conditions shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

B. This Agreement may be executed in identical counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement. In connection herewith, the Parties agree that a facsimile or electronic copy of a Party's signature shall be deemed the equivalent of an original.

C. This Agreement is binding on the Parties and their predecessors, successors, parents, subsidiaries, assignees, agents, directors, officers, transferees, employees, and shareholders. Each of the signatories of this Agreement represents and warrants that he or she is authorized to execute this Agreement on behalf of his or her respective Party and, by his or her signature, to bind that Party to this Agreement.

D.  If any part or any provision of this Agreement is finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part or provision shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts or provisions of this Agreement.

E.  Plaintiff hereby warrants and represents that she has not assigned nor in any way transferred or conveyed, all or any portion of the claims covered by this Agreement. This warranty and representation is an essential and material term of this Agreement, without which Defendant would not have entered into it.

F.  The Parties cooperated in the drafting of this Agreement, and if it is finally determined that any provision in this Agreement is ambiguous, that provision shall not be presumptively construed against any Party.

G.  All notices required under this Agreement shall be served on the Parties via U.S. Mail or a recognized overnight courier service as follows:

**NOTICES TO DEFENDANT:**

SHUTTS & BOWEN LLP
Attn: Paul J. Scheck
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 423-3200
Primary Email: pscheck@shutts.com
*Attorney for Defendant, Gar Shing Realty Corp.*

**NOTICES TO PLAINTIFF:**

FULLER, FULLER & ASSOCIATES, P.A.
Attn: John P. Fuller, Esq.
12000 Biscayne Blvd., Suite 502

North Miami, Florida 33181
Telephone: (305) 891-5199
jpf@fullerfuller.com

H. This Agreement shall be governed, in all respects, by the laws of the State of Florida, irrespective of choice of law rules. The proper venue in any action to enforce the terms of this Agreement shall be any court of competent jurisdiction within Orange County, Florida because all payments pursuant to the settlement Agreement are due and owed there.

**IN WITNESS WHEREOF**, we have hereunto set our hands as of the date above written.

**JAIME GENTRY, as Mother and Natural Guardian of RG, a minor**

_Jaime Gentry_ 5-/5-/2021
                    Date

**GAR SHING REALTY CORP., a Florida corporation**

By: _[signature]_

Name: Bo C KHA

Title: PRESIDENT            Date: 05/03/2021

8

## "EXHIBIT 1"

A. <u>**Parking and Accessible Routes**</u>

1. Accessible parking spaces shall provide an accessible route connected to the respective entrance they serve.

2. All curb ramps that are on the accessible routes to the facility shall be compliant.

3. All accessible routes shall have vertical change in levels no greater than ¼ inch.

4. Curb ramps on the accessible route shall have landings that do not accumulate water, to the extent remediation is readily achievable.

5. All curb ramps on the accessible route shall have changes of level no greater than ¼ inch.

6. All disabled parking spaces shall be properly striped in accordance with the ADA and all disabled parking spaces shall be properly maintained.

7. All disabled parking spaces shall have slopes and cross-slopes not to exceed 3%.

B. <u>**Dollar Tree**</u>

1. Provide 36" clear width of walking surfaces in the retail aisles and in route to the restrooms.

2. Provide insulation on the lavatory drain pipe and water liner.

3. Lower the urinal.

4. Relocate the shelf above the toilet.

9

5. Relocate the toilet paper so that it does not obstruct access to the grab bars.

6. Provide 60" clearance from the rear wall in toilet to the lavatory.

7. Place flush control in the proper location.

C. **Policies and Procedures**

1. Establish a policy, practice and procedure to ensure that all goods, services and facilities are readily accessible by persons of disabilities.

2. Establish policies to maintain features to ensure that are readily accessible and useable by persons with disabilities.

ORLDOCS 18632077 2

10